## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| EMMA WILSON and HANNAH STOFFEL,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>NICHOLAS JOHNSON, HUNTINGTON  )<br>UNIVERSITY, HUNTINGTON UNIVERSITY  )<br>BOARD OF TRUSTEES, LAUREN JOHNSON,  )<br>CURTIS HINES and JOHN DOES 1-50,  )<br>)<br>Defendants.  ) | Case No.: 1:22-cv-00336-HAB-SLC |

## HUNTINGTON UNIVERSITY AND HUNTINGTON UNIVERSITY
## BOARD OF TRUSTEES' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants Huntington University ("University") and Huntington University Board of Trustees ("Trustees") (collectively "Huntington") have moved the Court to dismiss this action for the reason that the Plaintiffs have failed to state a claim under Title IX of the Education Amendments of 1972, the federal law prohibiting sex discrimination in federally funded educational programs.

## I. INTRODUCTION

In addition to various state-law tort claims, the Plaintiffs have brought a single federal claim under Title IX. Title IX states that, subject to certain exemptions, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although the statute itself does not expressly provide for a private right of action, federal

courts have outlined the circumstances under which it will hold an institution receiving federal funding liable for a violation of Title IX.  This is a limited remedy; a university is *not* strictly liable for an employee's abuse or harassment.  Liability under Title IX turns exclusively on the *response* of the *institution* to *its actual knowledge* of wrongful conduct.  Even then, it is only when the institution's response is so deficient as to amount to deliberate indifference to the alleged harassment or abuse that a court may find a violation of Title IX.  Given this high bar for plaintiffs to recover under Title IX, dismissal is appropriate and is routinely granted in such cases, as it should be here.

The Plaintiffs have filed a lengthy Complaint spanning more than thirty pages and 271 separate pleading paragraphs.  Despite the hundreds of contentions made, the Complaint, which relies heavily on conclusory allegations about unspecified individuals affiliated with the University, nevertheless fails to allege facts to support the most basic elements of a claim under Title IX.  This is the sole basis for original jurisdiction in this Court.  Because that claim should be dismissed, the Court should decline to exercise supplemental jurisdiction over the numerous state-law claims under 28 U.S.C. § 1367, especially where, as here, the case is in its infancy and no significant steps to litigate the matter have occurred in this forum.  The Court should therefore dismiss the suit in its entirety so that the Plaintiffs may refile their state-law claims in the appropriate state court.

## II.  ALLEGATIONS AGAINST THE UNIVERSITY AND ITS TRUSTEES

As discussed below, on a Motion to Dismiss, the Court must accept as true all well-pleaded facts.  Accordingly, Huntington sets out the relevant allegations against the

University and its Trustees as pleaded by the Plaintiffs without regard to their underlying truth or context.

The Plaintiffs have brought allegations of disturbing actions allegedly taken by Defendant Nicholas Johnson, the former head cross-county and track coach at the University, which include allegations of sexual abuse and harassment as well as "doping" athletes in the cross-country program. Relevant to this motion to dismiss are the allegations respecting three things: (1) *who* at the University had actual knowledge of the Plaintiffs' allegations; (2) *what* the University actually knew; and (3) *how* did the University respond to what was actually known by an appropriate person charged with the responsibility and power to act for the University.[1]

The Plaintiffs allege that the University, former Assistant Coaches Lauren Johnson and Curtis Hines, and Unidentified Does knew that Plaintiff Hannah Stoffel was spending time alone with Nicholas Johnson. Complaint ¶ 95. The Plaintiffs assert that in the summer of 2020, parents of athletes who attended Huntington High School informed Unidentified Does that the parents were "concerned about the flow of high school girls into and out of the Johnson home," but that the University and the Unidentified Does took no action. Complaint ¶¶ 105-06.

There are also allegations that the University, the assistant coaches, and the Unidentified Does allowed Johnson to meet with his female athletes alone and allowed him to massage athletes, including female athletes alone, despite knowing he "was not

---

[1] In addition to making allegations against the named Defendants, the Plaintiffs make numerous allegations against John Doe Defendants, which they describe as "as of yet unknown administrators, and Board of Trustee members of Huntington University who knew or should have known about Nicholas Johnson's conduct" ("Unidentified Does"). Complaint ¶ 34.

an athletic trainer or medical doctor, or nurse, or physical therapist." Complaint ¶¶ 116-19, 159.  The Plaintiffs allege that the assistant coaches, the University, and the Unidentified Does were aware that Nicholas Johnson had sexually explicit conversations with student athletes but did nothing to stop them."  Complaint ¶ 146.

In response to a criminal complaint filed by the State of Indiana against Johnson for child seduction in violation of Ind. Code § 35-42-4-7(n) &(q)(2) involving a high school runner and Johnson's subsequent arrest in December 2020, the University "fired Johnson in December 2020 shortly after his arrest." Complaint ¶¶ 121-24.  The University subsequently hired Defendant Lauren Johnson as the replacement head coach.   Complaint ¶¶ 127-28.

The Plaintiffs allege that, at some unspecified period of time, "Nicholas Johnson had female members of the team, including Plaintiffs, live with him in his basement." Complaint ¶ 147.  The Plaintiffs allege that the assistant coaches, the University, and the Unidentified Does "(obviously) were aware that females from the Huntington University Cross Country team were living with Johnson but did not nothing to disrupt this apparent troubling behavior."  Complaint ¶ 148.

The Plaintiffs assert that some unidentified person—who is not alleged to have an affiliation with the University or the Trustees—told the members of the cross-county team "to write down positive thoughts regarding what Mr. Johnson means to them." Complaint ¶ 125.  At some time not set out in the Complaint, unidentified "Huntington University staff members" told students on the cross-county team that they could visit the Johnson home "for running advice and camaraderie." Complaint ¶¶ 131-32.  The Plaintiffs also allege "on information and belief" that after the University fired him "Nicholas Johnson continued to and still provides workouts to the runners at

Huntington University." Complaint ¶ 129. The Plaintiffs assert that the University and the assistant coaches "were deliberately indifferent toward the hostile environment Nicholas Johnson was fostering." Complaint ¶ 138.

The Plaintiffs allege that "[i]t was well known" to the assistant coaches and the University that Nicholas Johnson was providing "treatments" (including alleged "doping")[2] to the athletes he coached. Complaint ¶ 182-83, 193-94. Respecting the two assistant coaches and the University, the Plaintiffs alleged that they "did nothing to stop the delivery of drugs or any of Johnson's other treatments to the athletes he coached or to the children with whom Johnson had a 'professional relationship.'" Complaint ¶ 195.

Finally, the Plaintiffs assert that "[t]he inactions and deliberate indifference of Defendants Curtis Hines, Lauren Johnson, and Huntington University allowed Johnson to batter Plaintiff and create an environment that hindered female students from fully participating [in] the athletic program of Huntington University." Complaint ¶ 197.

With respect to the Title IX Claim, all Defendants (the assistant coaches, Nicholas Johnson, and the Unidentified Does) are alleged to have been employees of the University at all relevant times. Complaint ¶ 229. The Plaintiffs assert that due to the "actions/ inactions" of the University, the Trustees, Unidentified Does, and the assistant coaches, they suffered gender discrimination, sexual harassment, and sexual batteries. Complaint ¶ 230.

The Plaintiffs assert that certain conduct by Nicholas Johnson occurred "openly," in front of "unknown others on University property," Complaint ¶ 231-32, and claim

---

[2] The Plaintiffs assert that the University and Assistant Coach Hines knew or should have known about the Nike Oregon Project (and allegations of doping there) as well as the connection of Nicholas and Lauren Johnson to the Project. Complaint ¶¶ 51, 68-69, 71.

Nicholas Johnson's behavior was "common knowledge," Complaint ¶ 233, "known to John Doe Defendants and to the Huntington University and their Trustees as well," Complaint ¶ 234, that the University, their Trustees, and John Does "had actual knowledge of Nicholas Johnson's batteries of Plaintiffs," Complaint ¶ 237, and "were deliberately indifferent and took no action to protect Plaintiffs from Defendant Nicholas Johnson," Complaint ¶ 239.

Respecting authority and power, the Plaintiffs claim that the University, the Trustees, the Unidentified Does, and the two assistant coaches "all had the authority to take corrective measures to protect Plaintiffs." Complaint ¶ 238.

## III. LEGAL DISCUSSION

### A. The Plaintiffs Have Failed to State a Claim for a Violation of Title IX.

#### 1. *Standard on a Motion to Dismiss for failure to state a claim*

A motion to dismiss for failure to state a claim upon which relief can be granted is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion challenges a complaint's viability. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citations omitted). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint cannot rest on "mere conclusory statements" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Rather, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Although "detailed factual allegations" are not

necessary to withstand a Rule 12(b)(6) motion, *Twombly*, 550 U.S. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cavalier v. Catholic University of America*, 306 F. Supp. 3d 9, 25 (D.C. Cir. 2018) (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Courts are not, however, required to "ignore facts set forth in the complaint that undermine the plaintiff's claim . . . ." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citations omitted). Although a court, when deciding a motion to dismiss, "must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party," *Dawson v. N.Y.C. Transit Auth.*, No. 13 Civ. 6593, 2014 WL 5343312, at *4 (S.D.N.Y. Oct. 21, 2014) (Woods, J.), *vacated on other grounds*, 624 F. App'x 763 (2d Cir. 2015), that does not mean that a plaintiff's allegations must be accepted at face value. Matters other than allegations of existing facts are not entitled to the assumption of truth. Such matters include "sheer speculation, bald assertions, and unsupported conclusory statements. A complaint that

offers 'labels and conclusions' or 'naked assertion[s]' without 'further factual enhancement' will not survive a motion to dismiss." *Taha v. Int'l Bd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Iqbal*, 556 U.S. at 678, 681; *Twombly*, 550 U.S. at 555).

> **2.** ***The Plaintiffs have failed to plead facts that raise a plausible claim that the University had actual knowledge of the alleged discrimination and abuse.***

Although as a recipient of federal funds the University is theoretically subject to suit under Title IX, it nevertheless is entitled to dismissal here. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

As the United States Supreme Court has recognized, the "express statutory means of enforcement [of Title IX's mandate] is administrative" with the right to damages arising under a judicially-created "implied private right of action." *Gebser v. Lago Vista Ind. Sch. Dist.* 524 U.S. 274, 281 (1998). Given the nature of the remedy, the Court held that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond. *Id.* at 290. For liability, a defendant's response must amount to "deliberate indifference to discrimination. The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. **The premise, in other words, is an official decision by the recipient not to remedy the violation. That**

**framework finds a rough parallel in the standard of deliberate indifference**." *Id.* at 290 (emphasis added).

*Gebser* thus requires three related inquiries: "First, the plaintiff must be able to identify an 'appropriate person' under Title IX, i.e., a school district official with the authority to take corrective measures in response to actual notice of sexual harassment. Second, the substance of that actual notice must be sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment. And finally, the official with such notice must exhibit deliberate indifference to the harassment." *See Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254 (11th Cir. 2010) (citing *Floyd v. Waiters,* 171 F.3d 1264, 1264 (11th Cir. 1999); *Gebser,* 524 U.S. at 291; and *Sauls v. Pierce County Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005)).

"To survive a motion to dismiss, a Title IX plaintiff 'must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of [ ] discriminatory intent.' Additionally, a Plaintiff must plausibly allege that 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures on the [university's] behalf has actual knowledge of discrimination and fails adequately to respond.'" *Sutton v. Stony Brook Univ.*, No. 18-CV-7434(JS)(ARL), 2020 WL 6532937, at *7 (E.D.N.Y. Nov. 5, 2020) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994) ("A plaintiff alleging . . . gender discrimination by a university must do more than recite conclusory assertions."), and *Gebser*, 524 U.S. at 290, and citing *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011)). The Complaint fails in all three respects and therefore the Plaintiffs have failed to adequately state any federal claim under Title IX.

### a. The Plaintiffs have not identified an "appropriate person" under Title IX.

In *Gebser*, the U.S. Supreme Court made clear that it would frustrate the purposes of Title IX to permit any kind of liability based on respondeat superior or constructive notice. *Gebser*, 524 U.S. at 285; *id.* at 288 ("Congress did not intend to allow recovery in damages where liability rests solely on principles of vicarious liability or constructive notice. Title IX's express means of enforcement—by administrative agencies—operates on an assumption of actual notice to officials of the funding recipient."). The remedial framework therefore requires notice of the violation "to the appropriate person" and an opportunity to address the violation before any liability can attach. *Id.* at 290.

It is the Plaintiffs who bear the burden to put forth evidence to identify an "appropriate person"; a defendant bears no burden to show that an identified person is not an "appropriate person." *See, e.g.*, *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 458 n.2 (8th Cir. 2009) (citing *Lam v. Curators of the Univ. of Mo. at Kan. City Dental Sch.*, 122 F.3d 654, 657 (8th Cir. 1997) (plaintiff has burden to establish prima facie case)).

"An 'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination. . . . [A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser*, 524 U.S. at 290.

Here, the Plaintiffs have identified no University official whatsoever. All of their allegations are limited to the Unidentified Does. Moreover, even if the Plaintiffs were

claiming they do not know the identity of the "appropriate person," they have not alleged any facts whatsoever from which one could plausibly conclude that the unidentified person was a person who was vested with the power and authority to address alleged discrimination on behalf of the University, including the power and authority to take corrective measures.

The only persons affiliated with the University whom the Plaintiffs specifically identify are the assistant coaches: co-Defendants Lauren Johnsen and Curtis Hines. As to them, the Plaintiffs plead, but provide no factual foundation to establish—or even indicate—that assistant coaches "had the authority to take corrective measures." Complaint ¶ 238. Even if this alone were sufficient in terms of pleading, the conclusory statement says only that the assistant coaches had certain authority, but it does not allege from where the authority comes. For the University to be held liable, the authority to take corrective measures must come *from the University* such that the actor is acting on the University's behalf. The assistant coaches may have other authority, for instance, the authority of being in a marital relationship or in a friendship with another person. But other than the conclusory statement that Lauren Johnson and Curtis Hines "had the authority to take corrective measures," there are no facts alleged in the Complaint that indicate the University vested either assistant coach with the power and authority to impose corrective measures upon a head coach.

In *Kesterson v. Kent State Univ.*, 967 F.3d 519 (6th Cir. 2020), a student reported to her softball coach (who was a mandatory reporter under the school's Title IX policy[3])

---

[3] The mere obligation to report sexual harassment does not automatically convert an individual to an official with authority to act on behalf of the school to institute corrective measures. *See* 34 CFR § 106.30(a).

that the coach's son had raped her.  *Id.* at 523-24.  The student also told "several more

Kent State employees over the next year: two assistant coaches, her team's academic

counselor, and the executive director of Kent State's Women's Center. None of these

employees, all mandatory reporters as well, notified Kent State's Title IX office." *Id.* at

524.  Three years after the alleged rape, the student contacted the school's Title IX office

and filed a formal complaint.  Within one week, the coach and her son were no longer

affiliated with the school.  *Id.*

    In the subsequent lawsuit, the student alleged that Kent State violated Title IX.  The

courts disagreed:

> Kent State learned about [the student] Kesterson's allegations when
> she reported them to the school's deputy Title IX coordinator in 2015.
> That's the case even though Kesterson told Linder and a few other Kent
> State employees before then. **Only when an "appropriate person" at
> a school knows about sexual discrimination does the school
> have "actual knowledge**." An appropriate person is someone who "at a
> minimum has authority to address the alleged discrimination . . . on the
> [school's] behalf."
>
> Erin Barton was that person. She was Kent State's deputy Title IX
> coordinator and counts as an "appropriate person." She had the authority
> to take corrective actions on Kent State's behalf to remedy the sexual
> discrimination Kesterson faced.
>
> **Contrary to Kesterson's argument, the other employees she
> told lacked any similar powers. Yes, they could have aided her
> in getting access to helpful resources. And yes, they could have,
> and should have, reported her allegations to Kent State. But a
> university employee's ability to mitigate hardship or refer
> complaints does not make them an "appropriate person."**
> Otherwise, every employee would qualify and schools would face a form
> of vicarious liability that Title IX does not allow.

*Id.* at 127-29 (emphasis added) (quoting *Gebser*, 524 U.S. at 290; and citing *id.* at 288;

*Stiles ex rel. D.S. v. Grainger County*, 819 F.3d 834, 848 (6th Cir. 2016); *Hill v. Cundiff*,

797 F.3d 948, 971 (11th Cir. 2015); *Davis v. Monroe County Board of Education*, 526

U.S. 629, 643 (1999)).  As the Sixth Circuit went on to point out, the student "offers **no evidence that these individuals could act on Kent State's behalf**.  She instead says that the employees could have pointed her to school resources, and they all had an obligation to report her allegations.  True.  But that doesn't make these errors in judgment or violations of school policy the actions of Kent State or failures to respond by Kent State.  **An appropriate person is someone "high enough up the chain-of-command" that her decision constitutes the school's decision."**  *Kesterson*, 967 F.3d at 529 (quoting *Hill*, 797 F.3d at 971 (quotation omitted)); *see also Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 359 (5th Cir. 2020) (finding it is a school's "own misconduct—not the actions of its students, rank-and-file employees, or other third parties—that exposes it to liability under Title IX"); *Santiago v. Puerto Rico*, 655 F.3d 61, 75 (1st Cir. 2011) ("The empty allegation that a school employee 'failed to report' harassment to someone higher up in the chain of command who could have taken corrective action is not enough to establish institutional liability. Title IX does not sweep so broadly as to permit a suit for harm-inducing conduct that was not brought to the attention of someone with authority to stop it.") (citation omitted).

Because the Plaintiffs' Complaint fails to make any plausible allegations identifying the "appropriate person"—the one who actually knew about Johnson's illegal and discriminatory acts—and who then acted in deliberate indifference to the Plaintiffs' plight, the Plaintiffs have failed to state a claim under Title IX against the University and their claim should be dismissed.

        **b.**    **The Plaintiffs have failed to plead that the "appropriate person" had "actual knowledge" of facts sufficient to alert the University of the possibility of a Title IX violation.**

Putting aside the Plaintiffs' failure to identify the person whose knowledge and actions are appropriately imputed to the University, they have additionally failed to plausibly plead that any such person had actual knowledge of the conduct the Plaintiffs allege in their Complaint, as opposed to knowledge of something that would trigger an inquiry or raise suspicions. Not surprisingly, since the Plaintiffs primarily bring state law tort claims, the Plaintiffs repeatedly plead in their Complaint either that the University and its Trustees "knew *or* should have known," Complaint ¶¶ 34, 71, 266, 267 (emphasis added), or "knew *or* reasonably should have known," Complaint ¶¶ 217; 260 (emphasis added). These allegations about what the University should have known include "Nicholas Johnson's conduct," the Nike Oregon Project doping program, "Nicholas Johnson's . . . atrocious behavior," that "Nicholas Johnson was raping Hannah Stoffel," and that "Nicholas Johnson was infusing/injecting Hannah Stoffel with unknown substances and rubbing unknown substances on Hannah Stoffel." Complaint ¶¶ 34, 71, 217, 260, 266, 267. However, nothing short of *actual knowledge* is sufficient to state a claim under Title IX. *See, e.g.*, *Gebser*, 524 U.S. at 290 (identifying this as the legal "minimum"). As such, any allegations about what the University "should have known" fail as a matter of law to state a claim for liability under Title IX.

At times, the Plaintiffs do use words to indicate actual knowledge. *See, e.g.*, Complaint ¶ 117 ("knowingly allowed Nicholas Johnson to massage athletes, including female athletes alone"); *id*. ¶ 182 ("It was well known . . . that Nicholas Johnson was providing 'treatments' to the athletes he coached."); *id*. ¶ 183 ("It was well known to all defendants that these treatments included infusions/injections of unknown substances."); *id*. ¶ 193 ("It was known to all defendants that these treatments including massages and infusions/injections were performed on female team members by

Nicholas Johnson."); *id.* ¶ 194 ("It was well known to all defendants that these treatments included pills in clear plastic baggies of unknown substances to athletes."). There are other similar allegations that Nicholas Johnson "openly battered" the Plaintiffs, that "unknown others on University property" (obviously not limited to an "official") were eyewitnesses to Nicholas Johnson's molesting a Plaintiff, and that Nicholas Johnson's behavior and batteries were "common knowledge" among the Unidentified Does in the athletic department and "known" to the Unidentified Does and to the University and its Trustees.[4] Complaint ¶¶ 231-34, 237.

While such allegations might suggest a sufficient mens rea, the Plaintiffs' Complaint is still insufficient as a matter of law because its conclusory statements lack any factual foundation or specificity and do not rise to the level of plausibility. *See, e.g.*, *S.W. v. Clayton Cnty. Pub. Sch.*, 185 F. Supp. 3d 1366, 1375 (N.D. Ga. 2016) (finding plaintiffs' allegation that "[b]efore April 21, 2014, Defendants had actual knowledge" of the alleged harassment was insufficient to state a claim under Title IX where no other facts are alleged in the complaint that would lead to a credible inference that school officials knew of a teacher's harassment and assault of a student prior to the date the father notified the school and "merely reciting the actual notice element of a Title IX claim is not sufficient") (citing *Twombly*, 550 U.S. at 555 (" [A] plaintiff's obligation . . . requires

---

[4] The Plaintiffs allegations in their Complaint include matters that occurred subsequent to the University's firing Nicholas Johnson.  But those cannot form the basis for any liability on the part of the University since the University had no control over Johnson at that point.  *See, e.g.*, *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 512 (7th Cir. 2010) (quoting *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 645 (1999); and citing *id.* at 644) (For liability to attach "the school district must have 'substantial control over both the harasser and the context in which the known harassment occurs.'  This substantial control element is essential for Title IX liability because a school district cannot be liable for its indifference to harassment that it lacks the authority to prevent.").

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Cox v. S. Sanpete Sch. Dist.*, No. 4:18-CV-0070-DN-PK, 2019 WL 2297568, at *3 (D. Utah May 30, 2019) ("Plaintiff's conclusory statements that school officials 'had absolute knowledge' and 'had actual knowledge' are insufficient. Without additional factual support regarding the District's knowledge, these allegations are insufficient to satisfy the actual knowledge prong of the Title IX cause of action."); *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1123 (N.D. Cal. 2013) (dismissing Title IX claim on actual knowledge prong because plaintiffs "plead no facts which explain the nature or scope of information" the school received); *Poloceno v. Dallas Indep. Sch. Dist.*, 826 F. App'x 359, 363-64 (5th Cir. 2020) (pleaded facts that school principal saw students doing ceiling jumps, knew of the practice and its effects, and knew five female students were injured and saw the school nurse were nothing more than "conclusory allegations [that] do not plausibly show that [the principal] had actual knowledge that [a gym teacher] was engaging in any intentional discrimination toward female students, nor do they support a reasonable inference of actual knowledge"); *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 221-22 (D.D.C. 2012) (finding assertions that school had been on notice of a teacher's "physical and verbal assault tendencies" were conclusory absent "any indication as to why, when, or how Defendant was on notice, lack[ed] meaningful factual content and [was] thus insufficient on its own to show actual knowledge by any appropriate person or persons of the alleged harassment, at a time when it was ongoing such that remedial action would have been possible").

    In addition, the mere fact of close contact between a coach and a student athlete cannot, absent more, provide a school with actual knowledge of wrongdoing.  In *Doe v.*

*Flaherty*, 623 F.3d 577 (8th Cir. 2010), the Eighth Circuit found that a basketball coach's text messages to female students containing inappropriate comments without more did not provide a supervisory school official with actual notice of sexual abuse. *Id.* at 585. "A student's familiar behavior with a teacher or even an 'excessive amount of time' spent with a teacher, without more, does not 'automatically give rise to a reasonable inference of sexual abuse.'" *Id.* (citing *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 659 (8th Cir. 2001)). Because the Plaintiffs have failed to plausibly allege actual knowledge on the part of an appropriate person, the Court should dismiss their Title IX claim.

> **c.      The Plaintiffs have failed to plead that an appropriate University Official with actual knowledge of wrongdoing responded with deliberate indifference.**

Even if the Plaintiffs could plead actual knowledge on the part of an appropriate person, they would still need to plead that the response from the University amounted to deliberate indifference. This is a high bar to surmount. *See, e.g.*, *Davis*, 526 U.S. at 643 (characterizing the "deliberate indifference" standard it had adopted in *Gebser* as a "high standard" that was intended to "to **eliminate any 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions'**" (quoting *Gebser*, 524 U.S. at 290-91); *Doe v. Galster*, 768 F.3d 611, 619 (7th Cir. 2014) ("The standard of deliberate indifference **sets a high bar** for plaintiffs under Title VI and Title IX.") (emphasis added); *see also, e.g.*, *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 368 (5th Cir. 2019) ("Deliberate indifference is an **extremely high standard to meet**.") (emphasis added) (citation omitted); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2012) ("The deliberate

indifference standard outlined by the Supreme Court in *Davis v. Monroe County Board of Education* is a **narrow one**.") (emphasis added); *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010) (stating that in the context of a private right of action under Title IX, "[d]eliberate indifference is an **exacting standard**") (emphasis added).

The Plaintiffs concede that in December 2020, "shortly after his arrest," the University terminated Nicholas Johnson's contract. Complaint ¶ 124. Without any specifics as to who the appropriate person was and actually *when* the appropriate person with the ability to correct behaviors on the University's behalf had actual knowledge (and the nature of that actual knowledge) it is impossible for the Plaintiff to plead plausibly that the University not only failed to address the issue but exhibited what amounted to  deliberate indifference to the situation. In fact, given the speed with which the University acted when it did become aware that Johnson had been charged with a sex crime, the allegations in the Complaint actually belie any potential inference of deliberate indifference.

### 3. *The Plaintiffs cannot state a claim under Title IX against the University Trustees/Unidentified Does*

In the "Parties" section of the Complaint, the Plaintiffs set out allegations identifying the various parties to this lawsuit. Respecting Defendant Huntington University Board of Trustees, the Plaintiffs' allegations are limited to the following:

> 33.    Huntington University Board of Trustees can be served at 2303 College Avenue Huntington, Indiana 46750.

> 34.    **John Does 1-50 are** as of yet unknown administrators, and **Board of Trustee members** of Huntington University who knew or should have known about Nicholas Johnson's conduct.

Complaint ¶¶ 33-34 (emphasis added). The Plaintiffs thus appear to seek to impose

liability under Title IX against the members of the Board of Trustees. However, Title IX

liability, the authority of which is based on the receipt of federal funds, does not attach

to individuals. *See, e.g.*, *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257

(2009) ( "Title IX reaches institutions and programs that receive federal funds . . . but it

has consistently been interpreted as not authorizing suits against school officials,

teachers, and other individuals") (citations omitted)). As this Court has recognized,

> Courts have held **that it is the institution, and not individuals**
> **directing the institution, that must be sued for Title IX**
> **violations** because Title IX seeks to prevent sexual discrimination by
> beneficiaries in programs and activities that receive federal funds. The
> *Petaluma* court specifically noted that the "fact that administrative
> enforcement is directed at the institution that receives federal funds
> suggests that the private right of action is similarly confined to actions
> against the institution." The court agrees with the majority of courts that
> have explicitly held that a damage remedy under Title IX is only available
> against an "education program or activity receiving Federal financial
> assistance," not against individuals. Dr. Calvin's motion for summary
> judgment on plaintiffs' Title IX claims is granted.

*Mary Doe v. Lance*, No. 3:95-CV-736RM, 1996 WL 663159, at *2 (N.D. Ind. Oct. 30,

1996) (emphasis added) (quoting *Doe v. Petaluma*, 830 F. Supp. 1560, 1576-77 (N.D.

Cal. 1993); and citing *Lilliard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 730 (6th Cir.

1996) (Nelson, J., concurring) ("I do not believe that Title IX can appropriately be read

as subjecting anyone other than educational institutions to liability for violation of its

terms."); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988) ("In

implying a cause of action under Title IX, the Supreme Court has considered only

actions against the educational institution itself. . . . Accordingly, the separate liability of

the supervisory officials must be established, if at all, under section 1983, rather than

under Title IX."); *Nelson v. Temple University*, 920 F. Supp. 633, 638 (E.D. Pa. 1996)

("Plaintiff's Title IX claims against [the individual] will be dismissed."); *Clay v. Board of Trustees of Neosho County Community College*, 905 F. Supp. 1488, 1495 (D. Kan. 1995) ("Title IX actions may only be brought against an educational institution, not an individual acting as an administrator or employee for the institution"); *Leija v. Canutillo Indep. Sch. Dist.*, 887 F. Supp. 947, 953 (W.D. Tex. 1995); *Garza v. Galena Park Indep. Sch. Dist.*, 914 F. Supp. 1437, 1438 (S.D. Texas 1994); *Seamons v. Snow*, 864 F. Supp. 1111, 1116 (D. Utah 1994)).

Accordingly, even if the Plaintiffs could state a claim under Title IX against the University, the Court must nevertheless dismiss any Title IX claim against any Defendant other than the University (or the Board of Trustees[5] as an entity that is the nominal equivalent to the University). This would include the dismissal of any individual Trustees and all of the Unidentified Does.

### B. This Court Should Dismiss the Remaining State-Law Claims.

In addition to federal question jurisdiction for their Title IX claim, the Plaintiffs assert this court has supplemental jurisdiction over all the remaining state-law claims. Supplemental jurisdiction is appropriate where the other claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, since the sole federal claim should be dismissed for failure to state a claim,[6]

---

[5] It may be that the Plaintiffs do not intend by naming the "Huntington University Board of Trustees" to make Title IX claims against individual Trustees, though that inference is somewhat at odds with its attempt to name individual Trustees among the "Unidentified Does" and to assert that those Unidentified Does *and* the Trustees *and* the University are liable under Title IX. Whatever parlance is used, the only proper defendant in an action under Title IX is the recipient of the federal funds itself.

[6] In addition to jurisdiction under 298 U.S.C. § 1331, the Plaintiffs also claim "[t]his Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy

the Court must consider whether to continue to exercise supplemental jurisdiction over the state-law claims.

"Where this court dismisses a federal law claim brought by the plaintiffs, it will also dismiss state law claims that are supplemental to that particular federal claim, without prejudice to the plaintiffs' right to refile the supplemental claim in state court." *Boyd v. Anderson*, 265 F. Supp. 2d 952, 958 (N.D. Ind. 2003); *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 812 (7th Cir. 2021) (with Title IX claim dismissed, "district court appropriately dismissed Plaintiffs' state law claims without prejudice, thereby relinquishing subject matter jurisdiction over the remaining claims") (citing *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 628 (7th Cir. 2020) (no abuse of discretion in declining to exercise supplemental jurisdiction over state law claims); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904 (7th Cir. 2007) (describing the "sensible presumption" that federal courts may dismiss state law claims when all federal claims have dropped out of a case prior to trial)).

Without the Plaintiffs' Title IX claim, there is no reason for this Court to preside over what would be a wholly state-law matter involving Indiana parties, especially where the litigation has not emerged from the pleadings stage. For these reasons, the Court should

---

exceeds $75,000 exclusive of interest, costs, and attorney fees." Complaint ¶ 3. Because the Plaintiffs' own Complaint establishes that the parties are not diverse, *id.* ¶¶ 4, 9, 14, 18, 25, 28, this Court does not have subject matter jurisdiction under 28 U.S.C. 1332. *See, e.g.*, *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 805 (7th Cir. 1997) ("When a plaintiff sues multiple defendants in a diversity action, complete diversity must be present. That is, the plaintiff must satisfy the diversity requirements for each defendant or else encounter dismissal.") (citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 829, 109 S. Ct. 2218, 2221, 104 L. Ed. 2d 893 (1989); *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L. Ed. 435 (1806)).

dismiss this matter in its entirety and allow the Plaintiffs to bring their state-law claims in an Indiana state court.

## IV. CONCLUSION

As the Seventh Circuit and other federal courts have found, liability under Title IX is only appropriately visited upon an institution—and never an individual—where an official of the institution with the power and responsibility to act on behalf of the institution has actual knowledge of the alleged abuse or harassment and thereafter responds to that actual knowledge so deficiently that it demonstrates deliberate indifference to the victims. None of that happened here. Despite making hundreds of detailed allegations in their Complaint, the Plaintiffs have utterly failed to allege within their narrative the fundamental and necessary facts sufficient to plausibly plead a Title IX violation. In fact, as the Plaintiffs themselves concede, when the University became aware of allegations against Nicholas Johnson that did not arise out of his employment with the University, it acted quickly to remove him from his position at the University.

Thus, on the sole issue of whether the Plaintiffs have pleaded actual facts sufficient to make a facially plausible claim that an appropriate University Official had actual knowledge of the allegations against Nicholas Johnson and then acted with deliberate indifference to them, the answer is plainly no. As set out above, the Plaintiffs' allegations as to the who, what, and how do not rise above conclusory speculation. The Court should therefore dismiss the Title IX claims against the University, the Trustees, and all other individual Defendants.

With the sole federal question dismissed at the very outset of this case, the Court should dismiss all remaining claims and permit the Plaintiffs to refile their action in

state court, which is the more appropriate forum in which to consider the remaining state-law tort claims brought by the Plaintiffs.

Respectfully submitted,

BARRETT McNAGNY LLP

By  /s/Robert T. Keen, Jr.
    Robert T. Keen, Jr., #5475-02
    Cathleen M. Shrader, #18159-02
    215 East Berry Street
    Fort Wayne, IN  46802
    Telephone: (260) 423-9551
    Email:  rtk@barrettlaw.com
          cms@barrettlaw.com

*Attorney for Huntington University and Huntington University Board of Trustees*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 23d day of November, 2022, electronically filed the foregoing with the Clerk of the Court using the CM/ECF which sent notification of such filing to the following:

Annemarie Alonso
Jonathan Little
Gabrielle Olshemski
SAEED AND LITTLE, LLP
133 W. Market Street #189
Indianapolis, Indiana 46204
annie@sllawfirm.com
jon@sllawfirm.com
gaby@sllawfirm.com

Brock Hagerman
HULSE, LACEY, HARDACRE, & AUSTIN PC
911 Meridian Street
Anderson, Indiana 46016
brock@hulse-lacey.com

Derek L. Mandel
MANDEL RAUCH & LAMMERS, P.C.
704 Adams Street, Suite F
Carmel, Indiana 46032
dmandel@mhmrlaw.com

Rachel J. Guin
ROTHBERG LOGAN & WARSCO, LLP
505 E. Washington Blvd.
Fort Wayne, IN 46803
rguin@rothberg.com

Pamela G Schneeman,
STEPHENSON MOROW & SEMLER
3077 East 98th St Ste 240
Indianapolis, IN 46280
pschneeman@stephlaw.com

Matthew L Hinkle
COOTS HENKE & WHEELER PC
255 E Carmel Drive
Carmel, IN 46032
mhinkle@chwlaw.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM LLP
Two North Ninth Street
Noblesville, IN 46060
lroberts@cchalaw.com

/s/Robert T. Keen, Jr.
Robert T. Keen, Jr.