UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EMMA WILSON, HANNAH STOFFEL, and ERIN MANCHESS | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Cause No. 1:22-CV-336-HAB<br>) |
| NICHOLAS JOHNSON, HUNTINGTON UNIVERSITY BOARD OF TRUSTEES, RUSS DEGITZ, LAUREN JOHNSON, CURTIS HINES, AND JOHN DOES 1-50 | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**OPINION AND ORDER**

This case involves serious and disturbing allegations of sexual assault, battery and doping brought by Plaintiffs, former student athletes at Huntington University (the University), against the University's former track coach, Nicholas Johnson (Johnson), his wife, and others. The Amended Complaint (ECF No. 32), levels 22 state law counts against the various Defendants with an additional federal allegation against the University and its Board of Trustees (the Board) (collectively, "the University Defendants"), for violating Title IX of the Education Amendments of 1972. The University Defendants move to dismiss the Title IX claim and, in turn, for the court to decline the exercise of pendent jurisdiction over the other 22 claims. (ECF No. 44). The parties have fully briefed the motion, (ECF Nos. 45, 53, and 54) and it is ripe for consideration. Because the Court finds that the Plaintiffs have not plausibly pled facts that could establish "actual notice" by an "appropriate person" as Title IX requires, the University Defendants' motion to dismiss the Title IX claim will be GRANTED.

**I.      Plaintiffs' Allegations**

Before traversing into the Plaintiffs' relevant allegations, a word is necessary about the Amended Complaint. As the Seventh Circuit has explained "[p]rolixity is a bane of the legal profession." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Rule 8(a) "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Plaintiffs filed a 59 page, 457 paragraph, 23 count amended complaint (ECF No. 32) filled with over-heated rhetoric ("he should be in prison") and inflammatory references ("Larry Nassar-esque massages," "now disgraced coach Alberto Salazar," and cyclist Lance Armstrong's performance enhancing drug use). Despite its length, superfluous detail adding nothing of substance to the pleading, and the overly inclusive allegations, the Court's task is to "bypass the dross and get on with the case." *Id.* at 378 (internal citation and quotations omitted). District courts are busy enough; we need not parse through a morass of irrelevancies to get to the allegations that matter. With that admonishment over, the facts relevant to the Title IX allegations against the University Defendants are as follows:

Plaintiffs Emma Wilson ("Wilson"), Hannah Stoffel ("Stoffel"), and Erin Manchess ("Manchess") were, at various times from 2017 through 2021, students and members of the University's cross-country and track and field teams. (Am. Compl. ¶¶s 3–16). From 2018 until his arrest in December 2020, Johnson was the head cross country and assistant track coach at the University.[1] (Am. Compl., ¶18). His wife, Lauren (together, "the Johnson Defendants"), was the assistant cross country and track coach during this time, but, stepped into the head cross country coaching position after her husband was arrested in December 2020. (*Id.* ¶¶s 24, 25). More to come

---

[1] The University, a Christian university in Northern Indiana, receives monetary assistance from the federal government and is subject to Title IX, 20 U.S.C. § 1681, regulations.

on that later. Plaintiffs were coached by the Johnsons at various points during their student athletic careers.

Since 2019, Russ DeGitz (Dr. DeGitz) has been the Chief Operating Officer for the University and a member of the University's senior leadership team. In that role, Dr. DeGitz is "responsible for administrative duties involving university property, athletics, auxiliary services, and risk management." (Am. Compl. ¶ 38). In 2020, Dr. DeGitz was the Senior Team Leader for the University's Athletics Department and retained the ability to change the job descriptions of the coaching staff.

Plaintiffs generally allege that in 2019 the Johnson Defendants instituted an illegal doping program at the University that involved administering and injecting banned substances into cross-country and track athletes, including Plaintiffs, without their knowledge. They assert that the Johnson Defendants had prior connections to organized doping — the Nike Oregon Project (NOP), that were "publicly discoverable" at the time the University hired them. (Am. Compl. ¶¶s 93-94). They also claim that the University and Curtis Hines (Hines), another assistant cross-country and track coach at the University, knew or should have known, about the NOP.

If the alleged doping were not enough to raise eyebrows, in August 2020, while he was an employee of the University, Johnson took a minor student, known as Victim 1, from Huntington North High School to Oregon and engaged in sexual conduct with her "under the ruse of a recruiting trip to the University of Oregon." (Am. Compl. ¶ 105).[2] After Johnson's conduct surfaced, an unspecified University employee questioned Johnson about his relationship with Victim 1 (*Id.* ¶114). This individual was not Dr. DeGitz but Plaintiffs allege it was a different staff

---

[2] The details of this trip and the sexual contact between Johnson and Victim 1, is set out in a police report, ECF No. 32-7. Some details are also in the Amended Complaint.

3

member with decision making authority. (*Id.* ¶115). Although Johnson was questioned by this staff member, the University took no action against him.

Plaintiffs allege Dr. DeGitz, Johnson and two administrators from Huntington North High School participated in a meeting in August 2020. (Am. Compl. ¶ 118). This discussion, as Plaintiffs allege it, focused on Johnson's relationship with Victim 1 and included Johnson's own revelation that he had been "accused" by someone of being Victim 1's boyfriend, the dating relationship of Victim 1 and her sexual interactions with boys, and the accusation that Johnson forced Victim 1 to perform oral sex. This meeting also addressed concerns of community members about the flow of minors in and out of the Johnsons' home. (*Id.*. ¶ 120). The University took no actions against Johnson after this meeting.

Defendants validly challenge the accuracy of the Plaintiffs' account of this meeting. They point to the police report attached to the Amended Complaint, which they believe shows that only one Huntington North High School administrator, the Athletic Director, was present at the meeting and the main concern addressed at the meeting was recruiting violations, not sexual conduct, by Johnson. (Police Report, ECF No. 32-7, at 19-20). Any discussion of sexual conduct with Victim 1, according to them, was tangential to the recruiting violations concerns:

> Principal Gilg stated the initial concerns of HNHS staff with Mr. Johnson was recruiting violations with regards to eligibility. Principal Gilg stated AD Teusch met with Mr. Johnson and HU administrator Russ Degitz at HU reference these concerns but at no time were allegations of oral sex the reason for the meeting. AD Teusch stated they did discuss concerns about Mr. Johnson's relationship with Victim 1 but never about sexual interactions. AD Teusch stated this meeting took place around the time the school year began in August 2020. AD Teusch stated she had never had an individual conversation with Mr. Johnson but felt she needed to have a meeting with him because four coaches and one community member approached her with concerns about recruiting violations by Mr. Johnson. AD Teusch discussed free HU gear being given to Victim 1 and stated per the advice of the Indiana High School Athletic Association (IHSAA) AD Teusch had Victim 1 return all the items. AD Teusch stated the community member was concerned about the constant flow of students in and out of Mr. Johnson's residence. AD

> Teusch wanted Mr. Johnson to be aware of how the community is seeing things from the outside looking in and wanted this brought to his attention and HU's attention. I asked AD Teusch if Victim 1 was ever singled out in the meeting at HU. AD Teusch stated Victim 1 was only discussed due to the amount of time spent with Mr. and Mrs. Johnson. AD Teusch stated Mr. Johnson did bring up how he had been accused of being Victim 1's boyfriend. AD Teusch also stated Mr. Johnson brought up two boys that Victim 1 had been dating and how the boys have been pushing themselves on Victim 1 sexually. AD Teusch stated Mr. Johnson brought this up and it was not asked of him as they were only concerned with recruiting and how things might look to the community. AD Teusch stated Mr. Johnson was talking about so many "bizarre" things he might have mentioned being accused of forcing Victim 1 to perform oral sex on him but it was never the reason for the meeting. AD Teusch stated Mr. Johnson also brought up athletes on his HU team with past trauma, some sexual, and how he and his wife are helping the athletes get through these traumatic events.
>
> I asked AD Teusch if she and/or Mr. Degitz discussed next steps and what boundaries should be in place. AD Teusch stated this was discussed; however nothing specific, but Mr. Johnson was encouraged to make all decisions with the public eye in mind. AD Teusch stated Mr. Johnson discussed how he does treatment out of his residence for athletes and offered for anyone to come by at any time to see how things are set up for treatments.

(ECF No. 32-7 at 19-20). At best then, Plaintiffs' Amended Complaint omits facts from the police report that provide helpful context to this meeting. At worst, they intended to mislead the Court about the purpose of this meeting. But regardless of which account of this meeting the Court credits, this meeting involved none of the Plaintiffs nor did it involve any sexual misconduct by Johnson towards the Plaintiffs or any other female student at the University.

In July 2020, Stoffel alleges that Johnson began confiding his personal information to her and, he once showed up at the apartment she shared with Wilson, and sexually battered her. (Am. Compl. ¶¶s 143–152). Stoffel alleges that Johnson's unwanted attention became more frequent in the months that followed. She alleges Johnson raped her repeatedly from July through November 2020.[3] She also alleges that Johnson reduced her scholarship without explanation.

---

[3] The Complaint alleges that Johnson had a sexual relationship with Aspen Dirr (Dirr), who is not a plaintiff, when he coached her at the University and that by September 8, 2020, Lauren knew about that relationship. (Am. Compl. ¶¶s 100-101).

Plaintiffs allege that DeGitz, Hines, and Lauren had knowledge of various facts about Johnson. DeGitz, for instance, is alleged to know that Johnson had been reported to the Indiana Department of Child Services. (Am. Compl. ¶ 160). Hines and Lauren are tagged with knowledge that Johnson spent time alone with Stoffel and "often isolated the female members of the Huntington team for 'treatments.' (*Id.* ¶¶s 156–163). Plaintiffs assert that the University and John Doe Defendants knew that Johnson was spending time alone with Stoffel.

In September 2020, Victim 1 discovered sexual text messages on Johnson's phone from Johnson to Stoffel. Victim 1, in turn, threatened to disclose this information to Lauren if Johnson did not tell her. (Am. Compl. ¶¶s 170-173). Johnson told Lauren that he was in a sexual relationship with Stoffel and so Lauren had knowledge that two athletes coached by Johnson (Stoffel and Dirr) were in a sexual "relationship" with her husband.

The Complaint broadly asserts that "Huntington University staff and employees were aware that certain female runners refused to be alone with Johnson prior to the start of the 2020 cross-country season" (Am. Compl. ¶182), that it was known among the athletes that Johnson touched females inappropriately while giving them treatments (¶180), and that certain female athletes refused to get treatments from Johnson or be alone with him (¶181). The Complaint also asserts that the University Defendants, Lauren, and Hines "knowingly allowed" Johnson to meet with young female athletes alone and massage female athletes despite knowing he had no medical credentials.

In December 2020, Johnson was arrested for sexually exploiting Victim 1. Shortly after his arrest, the University fired Johnson. Lauren replaced Johnson as the head coach. Manchess vocally opposed Lauren as the replacement head coach.[4] Manchess participated in an interview with the

---

[4] Johnson continued to live with Lauren while on home detention.[4] The Plaintiffs allege that Johnson continued to provide workouts to runners at the University, including while on home detention.

Huntington Police Department regarding Johnson's use and provision of substances on her and other athletes. Because of her cooperation with law enforcement, Lauren confronted Manchess in Spring 2021. Manchess then ceased participation in the University track and field and cross-country programs.

To sum it up, Plaintiffs allege that Johnson subjected them to a hostile environment while they were athletes at the University. Johnson subjected Plaintiffs to assault, unwanted touching and advances including graphic sexual conversations that male athletes did not endure. Johnson also provided infusions and injections of unknown substances to female team members but did not provide these treatments to male athletes.

## II. Legal Analysis

### A. *Motion to Dismiss Standard*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to set forth a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Thus, when analyzing a Rule 12(b)(6) motion to dismiss, a court construes the claim in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

At a minimum, the claim must give fair notice of what the claim is and the grounds on which it rests; and the factual allegations must raise a right to relief above the speculative level. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009); *Tamayo*, 526 F.3d at 1081, 1083. While a claim need not include detailed factual allegations, a plaintiff has the

obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although this does not require heightened fact pleading of specifics, it does require the claim to contain enough facts to state a claim to relief plausible on its face. *Twombly*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("(a) plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief").

**B.     Discussion**

**1. Title IX Claim**

Title IX prohibits sex discrimination by recipients of federal education funding. 20 U.S.C. § 1681(a); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). A recipient of federal funds may only be liable for damages under Title IX for its own misconduct, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). The University Defendants may not be held vicariously liable under Title IX for an employee's violation of the statute. *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998)). But they may be held personally liable under Title IX if, with "authority to institute corrective measures," the University Defendants had "actual notice of, and were deliberately indifferent to, the [employee's] misconduct." *Doe*, 694 F.3d at 871. Thus, a plaintiff must plead facts that raise a plausible inference that the University (1) had actual knowledge of,

and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive, and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school. *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1246 (10th Cir. 1999).

To show that a school district had actual knowledge, plaintiffs must demonstrate that an "appropriate person" received actual notice of misconduct. *Gebser,* 524 U.S. at 290. At a minimum, an "appropriate person" is someone who has authority to take corrective measures on the school district's behalf to end the discrimination. *Id.* Whether an individual is an "appropriate person" is fact-specific; a court must look beyond job titles to evaluate whether an individual possesses the requisite authority to be an "appropriate person." *See Murrell*, 186 F.3d at 1247. Additionally, whether the allegations establish actual knowledge or whether the defendant's response to known acts was clearly unreasonable so as to permit an inference of deliberate indifference, may be decided on a motion to dismiss. *Davis,* 526 U.S. at 649.

The University Defendants argue that plaintiffs' Title IX claim fails because they do not plausibly allege facts that, if true, would support an inference that an "appropriate person" received actual notice of the alleged ongoing sexual and doping abuse of the Plaintiffs. They assert that "actual notice," means witnessing an incident or receiving a report of an incident. *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). They also argue that actual notice of harassment does not occur if the individual hears about or witnesses inappropriate conduct but that conduct is dissimilar to the harassment. *Wadsworth v. Maine School Administrative District 40/ Reg'l School Unit 40*, 2023 WL 2574951 (D. Me. 2023) (district's "actual knowledge" generally requires highly reliable and similar reports of inappropriate employee behavior, meaning that rumors, investigations, and student statements do not qualify). In *Gebser*, for instance, the court found that reports that a teacher made inappropriate comments during class could not give notice to school officials that

9

the teacher engaged in a sexual relationship with a student. 524 U.S. at 291. In other words, an individual's knowledge that misconduct might be occurring and could be uncovered by further investigation is not sufficient for actual notice. *Galster*, 768 F.3d at 617–18 ("School administrators certainly cannot escape liability by putting their heads in the sand," but the "standard set out in *Davis* is not satisfied by knowledge that something might be happening and could be uncovered by further investigation. The standard is 'actual knowledge.'").

And, just last year in *C.S. v. Madison Metro. Sch. Dist.*, the Seventh Circuit confirmed *Galster's* requirement that a school official's suspicion of misconduct is not enough for actual knowledge:

> [W]e hold that the relevant school official acquires actual notice upon learning that misconduct rising to the level of sex discrimination has occurred. Only then does Title IX impose an obligation to act. Contrary to suggestions in some of our past cases, Title IX does not permit institutional liability based solely on knowledge of the risk of future misconduct.

34 F.4th 536, 540 (7th Cir. 2022). Applying this standard of actual notice, the crux of the Plaintiffs' Title IX claim comes down to who knew what and when they knew it.

On this point, it is significant what is not alleged. None of the Plaintiffs have alleged that they reported Johnson's conduct to any "appropriate person" at the University. Plaintiffs make much out of the fact that Lauren and Hines knew various things including that Johnson provided treatments to female athletes, was alone with female athletes, and, in Lauren's case, she was aware of two female athletes that Johnson was engaging in a sexual relationship. Thus, Plaintiffs seek to impute their knowledge to the University and assert that "any reasonable administrator" should have known of Johnson's misconduct. But there are two overarching problems with this argument.

First, "[t]he Supreme Court has flatly rejected applying a 'knew or should have known' standard to Title IX claims." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605

(7th Cir. 2008). Second, in seeking to establish knowledge, "it is not enough the misconduct is reported to any employee. The reported-to employee must 'at a minimum ha[ve] the authority to institute corrective measures on the district's behalf.'" *Gebser*, 524 U.S. at 277.

Here, even if the assistant athletic coaches (Lauren and Hines) knew about the sexual abuse and doping allegations, there are no corresponding allegations that they had authority to take corrective measures to stop Johnson's abuse of the Plaintiffs. *Doe v. Katy Indep. Sch. Dist.*, 427 F. Supp. 3d 870, 879 (S.D. Tex. 2019) ("Knowledge of teacher-student harassment by a school district employee who has no authority beyond reporting the misconduct to other school district employees is insufficient to expose the school district to Title IX liability.") Generally, "[s]upervisory authority is not present in 'the bulk of employees, such as fellow teachers, coaches, and janitors, unless the district has assigned them both the duty to supervise the employee who has sexually abused a student and also the power to halt the abuse.'" *Id.* (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997). And even if University policy required Lauren and Hines to report what they knew, the fact that they violated their obligations is not enough to impute actual knowledge to an appropriate person. *Doe 2 v. N. Carolina State Univ.*, 2023 WL 5916451, at *2–3 (E.D.N.C. Sept. 11, 2023) (violations of university reporting policy such as a failure to report instances of sex discrimination to the Title IX coordinator are not allegations supporting a finding of actual notice by the University.) Thus, absent allegations of supervisory authority making them "appropriate persons" for Title IX purposes, any knowledge Lauren, and Hines may have had is not enough to show actual knowledge.

That leaves the only other University employee named in the Amended Complaint, Dr. DeGitz. While Plaintiffs plead that Dr. DeGitz had supervisory authority (Am. Compl. ¶¶s 121-122), they have no functional allegations that Dr. DeGitz had actual knowledge of the Plaintiffs'

abuse by Johnson. There are no allegations that he received any reports or witnessed any incidents where Johnson was abusing Plaintiffs or any other female student. At most, when the Amended Complaint is read favorably to Plaintiffs, DeGitz knew about what occurred in the August 2020 meeting. But that meeting did not involve doping allegations and did not raise any question that Johnson sexually abused anyone at the University. DeGitz was on notice that Johnson may have committed recruiting violations and there were allegations and rumors that he had assaulted Victim 1, a non-university student. These allegations, however, without more, do not "nudge" Plaintiffs' claims that Dr. DeGitz had true knowledge of rampant doping abuses and sexual assaults at the University "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680; *see also Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("At the motion to dismiss stage, plaintiffs must set forth adequate factual detail to lift their claims from mere speculative possibility to plausibility.") (cleaned up); *Twombly*, 550 U.S. at 556 (2007) (plaintiffs need only allege enough facts to raise a reasonable expectation that discovery will reveal evidence of actual knowledge.).

Plaintiffs do allege that Dr. DeGitz "knew that …Johnson had been accused of raping" Victim 1. (Am. Compl. ¶ 159). They allege that Dr. DeGitz knew that female athletes met with Johnson alone (¶185); that he knew that Johnson had been reported to the Indiana Department of Child Services (¶160); Dr. DeGitz allowed Johnson to meet with female athletes alone after the August 2020 meeting (¶ 196); and Dr. DeGitz allowed Johnson to massage female athletes alone (¶198). Plaintiffs use these allegations to assert that the University Defendants knew or should have known of the abuse and failed to stop it. But these allegations are conclusory and, as noted above, the Supreme Court rejected the "knew or should have known" standard in Title IX claims. And the allegations provide no facts to support how Dr. DeGitz or any other "appropriate person" had this knowledge. The Court is sympathetic that Plaintiffs are at a disadvantage without having

the benefit of discovery, but their factual allegations are insufficient to plausibly claim that the appropriate employees at the University should have known of the sexual misconduct, doping and harassment, let alone they *actually knew* of it. For this reason, the University Defendants' motion to dismiss the Title IX claims is GRANTED, but with one final chance to amend. *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). The Court cannot say that amendment would be futile. Plaintiffs are granted leave to file an amended complaint if they believe they can allege facts that plausibly support their Title IX claim.

   2.   **Pendent State Law Claims**

With the sole federal claim giving rise to subject matter jurisdiction dismissed, the University Defendants also seek dismissal of the 22 state-law claims asserted by the Plaintiffs. The jurisdiction of the court over the state-law claims is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), which extends the jurisdiction of federal district courts to all claims that are sufficiently related to the claim or claims on which their original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution. Pendent jurisdiction is a doctrine of discretion. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). Thus, a district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988).

In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims. Thus the general rule is that, when all federal claims are dismissed before trial, the district court

should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Gibbs,* 383 U.S. at 726. There are, however, unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point to federal decision of the state-law claims on the merits. This is not such a case. The supplemental state-law claims will be DISMISSED without prejudice to refiling in state court.

## CONCLUSION

Based on the above, the University Defendants' Motion to Dismiss is GRANTED. The Title IX claim is DISMISSED with Plaintiffs granted until December 6, 2023, to file a Second Amended Complaint. Absent a timely amendment, the case, in its entirety, will be dismissed as explained in this Opinion and Order without further notice.

SO ORDERED on November 20, 2023.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT